UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID T. LESLIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-cv-01082-SPM |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff David T. Leslie ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because the Court finds the decision denying benefits was supported by substantial evidence, the Court will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I. **FACTUAL BACKGROUND**

At the hearing before the ALJ in August 2023, Plaintiff testified primarily about physical conditions limiting his ability to work, mentioning his knees, shoulders, heart, headaches, and a lack of feeling in his left hand. (Tr. 82). He said he is unable to reach overhead or to the side with his left upper extremity, but can reach in front of him, without weight, for a couple of seconds. (Tr. 83). He testified that his right upper extremity is a bit better, and he can reach with it overhead without weight and directly in front of him without weight, but not to the side. (Tr. 83-84). He testified that he lacks sensation in the fingers on his left hand, particularly in his ring and pinky fingers. (Tr. 84). Plaintiff communicated that for the past few months he had been unable to stand for more than 20 minutes without sitting, at which point he elevates his feet at a 45-degree angle and requires 20 minutes to stretch his leg. (Tr. 89-90). He can sit without moving for about 10-15 minutes and then needs to adjust or walk around. (Tr. 90-91). Plaintiff also testified to having multi-day migraine headaches about twice a month, with the help of medication. (Tr. 91-92).

Plaintiff testified that he experiences fatigue when writing notes such as a grocery list, and that he cannot lift a gallon of milk and pour with his left side. (Tr. 84-85). He can grasp items such as a toothbrush with his left thumb, index, and middle fingers, but would need to quickly switch to his right hand. (Tr. 84). He tends to drop things when using his right side. (Tr. 85). He has undergone physical therapy in both arms, "supposedly…enough to where they stopped it," and is anticipating surgical replacement of his joints. (Tr. 86). Plaintiff performs stretching exercises and uses medication and icing devices to help alleviate his pain, typically on a daily basis. (Tr. 87). He testified that he can no longer exercise due to pain, and some days the pain impedes his ability to sleep. (Tr. 88-89). Plaintiff lives with his wife, who does the laundry, dishes, and cleaning up around the house. (Tr. 93).

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## II. Procedural Background

Plaintiff applied for DIB and SSI on June 24, 2021 and September 10, 2021, respectively, alleging that he had been unable to work since July 25, 2017 due to A-Fib, high blood pressure/high cholesterol, multiple shoulder surgeries, nerve damage with limited use of left arm and hand, migraines, knee pain, blood clots in legs, sleep apnea, depression, and anxiety. (Tr. 422). His application was initially denied. (Tr. 210-32). Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) and, after a hearing, the ALJ issued a partially favorable decision on January 5, 2023. (Tr. 230-32, 158-192). However, on February 16, 2023, the agency's Appeals Council vacated the hearing decision and remanded it for further proceedings due to errors in the ALJ's decision, including res judicata principles. (Tr. 193-204).

On August 14, 2023, Plaintiff amended his alleged onset date to March 13, 2020. (Tr. 15, 78). After another administrative hearing at which Plaintiff testified, an ALJ issued an unfavorable decision on December 11, 2023. (Tr. 7-38). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, but the Appeals Council declined to review the case on January 12, 2024. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III. Standard for Determining Disability Under the Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health*

3

*& Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the

4

claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

5

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since March 13, 2020, the amended alleged onset date; that Plaintiff had the severe impairments of: osteoarthritis of the bilateral shoulders, right hip, and left knee, status post surgeries of the bilateral shoulders and knees; left clinical cubital tunnel syndrome and left ulnar neuritis, status post left ulnar nerve decompression; degenerative disc disease; and obesity. (Tr. 18). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 18-22). The ALJ found that Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following exceptions: He can never kneel, crawl, or climb ladders, ropes, or scaffolds. He can occasionally climb ramps/stairs, balance, stoop, and crouch. He can frequently reach laterally and in front with the bilateral upper extremities. He can never reach overhead with the bilateral upper extremities. He can perform work requiring no concentrated exposure to full-body vibration and no exposure to hazards such as unprotected heights or unprotected moving machinery.

(Tr. 22). At Step Four, the ALJ found Plaintiff was unable to perform his past relevant work as a mixing-machine operator, management trainee, electrician helper, and heating and air conditioning technician. (Tr. 29). At Step Five, relying on the testimony of a vocational expert, the ALJ found that there exist jobs in significant numbers in the national economy that Plaintiff can perform, including representative occupations such as order clerk, circuit board screener, and optical goods assembler. (Tr. 29-30). Accordingly, the ALJ determined that Plaintiff has not been under a disability from March 13, 2020 through the date of the ALJ's decision. (Tr. 30).

V. **DISCUSSION**

Plaintiff argues that the ALJ's decision should be reversed because the RFC is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ erroneously failed to incorporate limitations with respect to Plaintiff's ability to handle or finger with his upper extremities, or his ability to sit or stand at one time. The Plaintiff further asserts that the ALJ's determination failed to identify evidence addressing his ability to function in the workplace per the RFC and that the ALJ improperly relied on her own lay interpretation of the medical evidence.

A. **Standard for Judicial Review**

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es]

7

not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004)); *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

### B. RFC Determination

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ's decision does not reflect "functional evidence" supporting the RFC.[2] Specifically, Plaintiff asserts that the ALJ erred with respect to her limitations—or lack thereof—pertaining to Plaintiff handling, fingering, sitting at one time, and standing at one time. Plaintiff further argues that the ALJ improperly based the RFC on her lay interpretation of medical reports. Responding, the Commissioner asserts that the RFC is supported by substantial evidence.

---

[2] The Commissioner correctly observed that Plaintiff has not raised arguments pertaining to the ALJ's findings regarding Plaintiff's mental limitations, and the Commissioner therefore limited his argument to the issues Plaintiff raised pertaining to his physical limitations. Plaintiff did not dispute such scope in his reply brief.  Accordingly, the Court will consider this scope as conceded and focus its discussion on Plaintiff's physical limitations.

8

An ALJ determines the RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (citation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). But an ALJ "is not limited to considering medical evidence exclusively," as even though the "RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). The Court recognizes that an ALJ "may not draw upon [her] own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). The Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).

For the reasons stated in the Commissioner's brief, the Court finds Plaintiff's argument without merit. For support, Plaintiff cites *Noerper v. Saul*, 964 F.3d 738 (8th Cir. 2020), but that case is readily distinguishable. First, the court in *Noerper* took issue with the ALJ's reliance on a generalist's opinions over those of a specialist, whose opinion on limitations the ALJ "failed to acknowledge." *Id.* at 745-46. Such is not the case here. Here, the ALJ found the opinions of Plaintiff's treating orthopedic surgeon, Michael Potter, MD, "somewhat persuasive" in some respects and "largely unpersuasive" in others. (Tr. 27-28).  By contrast, the ALJ found the opinions of Plaintiff's primary care provider, Barbara Fulton, FNP, "not persuasive" because they were "minimally supported by reference to objective medical findings" and "not well supported by her own treatment notes."  (Tr. 27-28). Importantly, the ALJ also found that Ms. Fulton's opinions were not consistent with the record as a whole, "including the limitations given by the claimant's

9

treating surgeon, Dr. Potter" during the relevant period. (Tr. 28).[3] The ALJ gave due consideration to the generalist's opinions and accorded more weight to the opinions of Plaintiff's treating specialist.

Furthermore, unlike in *Noerper*, where the court found "simply no reliable evidence" to support the challenged RFC limitation, 964 F.3d at 746, the ALJ here cited functional evidence from the record to support the RFC determination. The ALJ's RFC assessment is supported by numerous medical records regarding Plaintiff's allegedly disabling physical conditions, his pain management, and his course of treatment, which collectively provide substantial detail about his ability to perform work related activities. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing disability); *see also Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) (allegations of disability that are inconsistent with the objective medical evidence weighs against the credibility of the claimant's allegations).

For example, with respect to Plaintiff's back or neck pain, the ALJ correctly observed that there was little evidence of complaints or treatment in the record during the relevant period, coupled with "fairly unremarkable" examination findings. (Tr. 26).  The ALJ pointed to Plaintiff's July 2020 MRI of the thoracic spine, the results of which showed generally mild degenerative disc disease in the thoracic spine without significant spinal canal stenosis and mild facet osteoarthritis at T10-T11 with moderate left neural foraminal stenosis. (Tr. 26, 1524). An MRI of the cervical

---

[3] Likewise, Plaintiff's reliance on *Ray v. O'Malley*, No. 1:23-CV-00074-SPM, 2024 WL 4298540 (E.D. Mo. Sept. 26, 2024) is unavailing.  In *Ray*, the court found that "[a]s to the vast majority of the relevant period, the record does not appear to contain *any* medical opinion evidence relevant to Plaintiff's physical ability to function." 2024 WL 4298540 at *5 (emphasis added).  By contrast, here there are numerous opinions and examination records from Dr. Potter and Ms. Fulton pertaining to the relevant period. (*See, e.g.,* Tr. 1209, 1674, 1657, 1819, 1949).

10

spine in July 2020 showed multilevel degenerative disc disease in the cervical spine with up to minimal spinal canal stenosis at C3-C4; and multilevel degenerative joint disease in the cervical spine with up to mild to moderate left neural foraminal stenosis at C3-C4 and mild to moderate bilateral neural foraminal stenosis at C4-C5. (Tr. 26, 1523). The ALJ further considered that, from mid-2022 and later, Plaintiff's treating orthopedic surgeon repeatedly indicated that Plaintiff could perform "light duty" and on occasion "gave weight lifting restrictions that were greater than those required for even light-level work." (Tr. 26; *see, e.g.,* Tr. 1883, 1953, 1921, 1996). The ALJ reasonably concluded from these factors that "any issues with back or neck pain appear to be mild" for the relevant period. (Tr. 26). *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 931-33 (8th Cir. 2010) (finding that the ALJ reasonably discounted allegations of disability based in part on unremarkable examination findings).

The record shows that Plaintiff suffered other chronic pain, primarily in his left upper extremity and his left knee, during the relevant period. Plaintiff asserts the ALJ erred in her RFC determination because she ignored the persistence of Plaintiff's symptoms and placed undue importance on any improvements in those symptoms. The Court disagrees. As an initial matter, the Court points out that the ALJ acknowledged Plaintiff's complaints and the persistence of his symptoms, and far from ignoring them, she imposed greater restrictions in the RFC than those suggested by the treatment notes from Plaintiff's specialized provider. She commented:

> Based on Dr. Potter's notes, the claimant likely improved to be able to perform light-level work at some point. However, during most of the period at issue, he was reasonably limited to lifting/carrying at the sedentary level as a precaution given his reports of worsened symptoms with increased lifting. Moreover, recent evidence of worsening left knee pain supports a limitation to standing/walking at the sedentary level.

11

(Tr. 26-27). Furthermore, the ALJ found that Dr. Potter's activity restrictions were only "somewhat persuasive" because, while well supported by his contemporaneous treatment notes, they were not entirely consistent with the record as a whole:

> [Dr. Potter] appeared to be considering only the claimant's left upper extremity impairments, which he was treating. And the record as a whole indicates the claimant also has a history of osteoarthritis in his knees as well as right shoulder (his left knee symptoms became more bothersome toward the later part of the period at issue, as noted above), which he did report to his providers who prescribed pain medications. Therefore, the record as a whole does support some *additional limitations*.

(Tr. 27) (emphasis added). The Court therefore finds Plaintiff's contention that the ALJ ignored his symptoms as unfounded; instead, the ALJ factored such symptoms into the RFC in a reasonable manner.

The ALJ also reasonably concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 24). First, the ALJ considered medical examinations in the record, which generally showed that although Plaintiff experienced pain, weakness, and tenderness to varying degrees during the relevant period, he appeared to be healing well and building strength (albeit not in a linear trajectory), and he generally maintained intact motor function, coordination, and gait. (Tr. 25; *see also, e.g.,* Tr. 1413, 1441, 1982-1984). Furthermore, the ALJ noted that Plaintiff's orthopedic examinations displayed improvement in his left upper extremity through consistent physical therapy and home exercises, as well as left ulnar nerve decompression surgery. (Tr. 26; *see also* Tr. 2061 ("He did have transposition of the ulnar nerve performed by Dr. Potter and that has definitely helped.")). Plaintiff often reported to Dr. Potter that he was regularly working out and gradually endeavoring to increase the weights he lifted both overhead and below waist level—generally lifting between 15 and 50 pounds—and at times was

even able to achieve push-ups on his knees or against the wall. (*See, e.g.,* Tr. 2057, 1821, 1650, 1928). Dr. Potter described his left elbow as having a normal range of motion and healing well. (*See, e.g.,* Tr. 1678, 1183, 1195, 1204). Furthermore, as mentioned above, Dr. Potter repeatedly noted that Plaintiff was limited to "light duty" work with weight lifting restrictions. (*See, e.g.,* Tr. 17, 1180, 1674, 1763, 1823, 1841, 1883, 1906, 1921, 1930, 2109).

Despite this steady record of lifting weights and working out, Plaintiff disputes the absence in the RFC of specific limitations on fingering and/or handling. However, the Court notes—as the ALJ did—that Plaintiff's treating orthopedic surgeon opined in a June 2023 medical source statement that Plaintiff had no limitations as to handling or fingering. (Tr. 27, 1945). Moreover, on examination, Plaintiff could make an okay sign, thumbs up, and sometimes cross his fingers, he displayed a normal finger range of motion, and his grip on his left hand was regularly recorded between 4+/5 and 5/5. (*See, e.g.,* Tr. 1183, 1195, 1204, 1220, 1651, 1667, 1759). Dr. Potter documented "mild pins and needles in the fingers and numbness about the elbow but sensation is returning and overall improving." (Tr. 1678; *see also* Tr. 1704, 1767, 2087).

The ALJ also pointed out that Plaintiff's complaints to his health care providers did not reflect the level of symptoms he indicated in his testimony. For example, the Plaintiff repeatedly reported to his primary care provider that he experienced effective pain management from his medications. (*See, e.g.,* Tr. 1981 ("He has multiple chronic orthopedic issues and pain medications definitely help."); Tr. 1999 ("Patient reports reasonable pain control management"); *see also* Tr. 1868, 1897, 2111). The ALJ observed that Plaintiff would report at appointments with his primary care provider that he was doing good or fairly well. (Tr. 28; *see, e.g.,* Tr. 1868 ("He has been doing good."); Tr. 2111 ("Has been doing fairly well.")). Plaintiff often described his shoulder pain as mild, such as when he lifted weights upward. (*See, e.g.,* Tr. 1713, 1758, 2093, 1452). As the ALJ

13

noted, Plaintiff also communicated to his primary care provider that, with treatment, his activities of daily living and functional mobility were stable and at baseline. (Tr. 28; *see, e.g.,* 1867, 2060, 2099, 2010, 1624, 1730). *See Hensley v. Colvin*, 829 F.3d 926, 933 (8th Cir. 2016) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

Given the above, the Court finds that the ALJ's RFC assessment was supported by substantial evidence and it will not disturb that decision. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge the credibility and resolve conflicts in evidence."). Moreover, for the reasons stated in the Commissioner's brief, the Court also finds that the ALJ's failure to specify Plaintiff's standing and sitting abilities in the RFC does not warrant remand, given the RFC's reference the regulatory definition of sedentary work. *See Seavey v. Berryhill*, No. 2:16-CV-00063-SPM, 2018 WL 1317172, at *5 (E.D. Mo. Mar. 14, 2018) ("[S]everal district courts within the Eighth Circuit have found no reversible error" where the ALJ expresses the RFC in terms of "light work" "without setting forth specific functional limitations in walking, sitting, standing, pushing, or pulling, but did include some other physical limitations.").

As for Plaintiff's assertion that the ALJ had no functional medical evidence available after the ALJ's partial discounting of the medical opinions, there is no requirement that the RFC finding be supported by a specific medical opinion, and the examination findings considered by the ALJ speak directly to Plaintiff's ability to function in the workplace. *See Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (there is no requirement that an RFC finding be supported by a specific medical opinion); *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011) ( "[M]edical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings."). The Eighth Circuit has held that mild

14

or unremarkable objective medical findings and other evidence may constitute sufficient medical support for an RFC finding, even in the absence of any medical opinion evidence directly addressing Plaintiff's ability to function in the workplace. *See*, *e.g.*, *Hensley v. Colvin*, 829 F.3d 926, 929-34 (8th Cir. 2016) (upholding the ALJ's finding that the plaintiff could perform sedentary work despite the absence of specific medical opinion evidence, finding "adequate medical evidence of [the plaintiff's] ability to function in the workplace" with respect to his knee where physicians recorded normal findings and the plaintiff reported greatly reduced or nonexistent pain after treatment); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding the ALJ's finding that the plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was "'silent' with regard to work-related restrictions such as the length of time she [could] sit, stand and walk and the amount of weight she can carry"). Here, as explained above, the ALJ properly relied on the numerous examination findings by Dr. Potter and Ms. Fulton during the relevant period to form the RFC.

Plaintiff also contends that the ALJ improperly relied on her own inferences from the findings in the medical records, and not on the opinions of any treating or examining source, in formulating the RFC. The Court disagrees. "It is the ALJ's responsibility to determine [a claimant's] RFC based on all the relevant evidence." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted). It was entirely appropriate for the ALJ to discuss and evaluate the objective medical evidence in the medical records in determining Plaintiff's RFC. Moreover, as explained above, the ALJ did not rely solely on her own evaluation of the objective medical evidence but also on opinion evidence, Plaintiff's providers' notes regarding his condition, and Plaintiff's own complaints. Here, although the RFC may not have mirrored any of the

15

particular opinions in the record, the record contained opinion evidence regarding Plaintiff's ability to function from multiple sources. The ALJ properly determined Plaintiff's RFC based on all of the evidence.

The Court acknowledges that the record contains conflicting evidence related to the persuasiveness of the opinion evidence and Plaintiff's RFC, and the ALJ could have reached a different conclusion on several of these issues. However, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### VI.   CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

                                                                       /s/ Shirley Padmore Mensah
                                                                       SHIRLEY PADMORE MENSAH
                                                                       UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of September, 2025.